**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Arie Zmora, Geoffrey Tabakin, Laurinda Stryker, Robbi Hoy, and all others similarly situated,

Plaintiffs,

v.

Civil No. 01-1905 (RHK/JMM)

**MEMORANDUM OPINION AND ORDER**

State of Minnesota, the Minnesota State College and University System, the Board of Trustees of the Minnesota State Colleges and Universities, St. Cloud State University, James H. McCormick, Roy H. Saigo, Richard D. Lewis, Don L. Hofsommer, and Suzanne L. Williams,

Defendants,

and

The Inter-Faculty Organization,

Defendant-Indispensable Party.

---

Daniel W. Schermer, Schermer & Schermer, Minneapolis, Minnesota; Donald S. Arbour, Arbour Law Office, Minneapolis, Minnesota; and Judith K. Schermer, Schermer Law Office, Minneapolis, Minnesota, for Plaintiffs.

Gary R. Cunningham and David W. Merchant, Assistant Attorneys General, State of Minnesota, Saint Paul, Minnesota, for Defendants.

---

Before the Court is the Defendants' Amended Motion for Partial Judgment on the Pleadings, brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiffs commenced a putative class action lawsuit alleging violations of Title VII of the



APR 1 0 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Civil Rights Act of 1964, the Minnesota Human Rights Act ("MHRA"), and 42 U.S.C. § 1983. The individual and class claims fall into the following categories:

- hostile work environment discrimination (based on religion and/or national origin), and discrimination in hiring, promotion, termination, compensation, and the provision of other terms and conditions of employment, perpetrated against past and present Jewish faculty members of St. Cloud State University ("SCSU"), in violation of 42 U.S.C. § 2000e-2 and Minn. Stat. § 363.03, subd. 1;

- retaliation against faculty and students, Jewish and non-Jewish, for opposing the above practices, in violation of 42 U.S.C. § 2000e-3 and Minn. Stat. § 363.03, subd. 7;

- denial of equal protection of the laws, First Amendment rights of free speech and the petition for redress of grievances, and due process under the Fourteenth Amendment, in violation of 42 U.S.C. § 1983; and

- aiding and abetting discrimination and aiding and abetting unlawful reprisals, in violation of the Minn. Stat. § 363.03, subd. 6.

The Defendants have brought their Motion for Partial Judgment on the Pleadings seeking the following relief:

- Dismissal with prejudice of Plaintiffs' MHRA aiding and abetting claim against Defendants Lewis and Hofsommer, as set forth in Count II of the Amended Complaint;

- Dismissal with prejudice of Plaintiff Tabakin's harassment and discriminatory failure to promote claims against the Defendants, as set forth in Count I of the Amended Complaint;

- Dismissal with prejudice of Plaintiff Tabakin's Title VII discrimination and retaliation claims (arising out of the denial of a transfer request by Tabakin), as set forth in Counts I and III of the Amended Complaint;

- Dismissal with prejudice of Plaintiff Hoy's Title VII retaliation claim

against the Defendants in Count III of the Amended Complaint;

- Dismissal with prejudice of Plaintiffs Zmora and Tabakin's Title VII claim of compensation discrimination against the Defendants, as set forth in Count I of the Amended Complaint;

- Dismissal without prejudice of Plaintiff Stryker's MHRA retaliation claim against Defendant Williams, as set forth in Count IV of the Amended Complaint; and

- Dismissal without prejudice of Plaintiff Stryker's § 1983 claim regarding alleged violation of due process, as set forth in Count V of the Amended Complaint.

For the reasons set forth below, the Court will grant in part and deny in part the motion.

## Background

### I. The Parties

#### A. The Named Plaintiffs

Arie Zmora was employed at St. Cloud State University ("SCSU") as an Assistant Professor in the History Department. (Answer ¶ 4; Am. Compl. ¶ 3.) Zmora is Jewish. (Am. Compl. ¶ 3.) Geoffrey Tabakin is employed as a Associate Professor in the Education Department at SCSU. (Answer ¶ 5; Am. Compl. ¶ 4.) Tabakin is also Jewish. (Am. Compl. ¶ 4.) Some time before commencing this action, Tabakin entered into a settlement agreement with one or more of the Defendants; the date and the contents of that settlement agreement, however, are not disclosed in the Amended Complaint.[1] (See

[1] The Defendants allege that Tabakin filed a harassment and discrimination complaint in April 1990 concerning comments made by various administrators and faculty that Jewish faculty are difficult to get along with, do not "fit in," are "aggressive,"

id. ¶ 27.) Laurinda Stryker is a non-Jewish Assistant Professor in the History Department. (Answer ¶ 6; Am. Compl. ¶ 5.) Robbi Hoy is a non-Jewish student at SCSU. (Answer ¶ 7; Am. Compl. ¶ 6.) Tabakin, Stryker and Zmora all filed charges of discrimination with the EEOC and received Right to Sue notices on their charges. (Answer ¶ 3; Am. Compl. ¶ 2.)

## B. The Putative Class

Plaintiffs purport to represent a class that apparently has two subgroups. (See Am. Compl. ¶ 17.) The first includes all past and present Jewish faculty members and all Jewish persons who applied for employment at SCSU.[2] (Id.) The second includes all faculty and students (both Jewish and non-Jewish) who have been retaliated against for opposing and objecting to the defendants' illegal discriminatory practices and/or petitioning the government for redress of grievances.[3] (Id.)

---

"violent," and "troublemakers." (Answer ¶ 16; see Am. Compl. ¶ 22k.) Defendants further allege that Tabakin filed a separate harassment and discrimination complaint in April 1990 regarding a statement made at an Education department meeting that Tabakin should take his concerns "to the Wailing Wall." (Answer ¶ 16; see Am. Compl. ¶ 22*l*.) SCSU investigated both complaints and told Tabakin that he could pursue those complaints with the EEOC, the Minnesota Department of Human Rights, or the courts. (Answer ¶ 16.) Defendants further allege that Tabakin, SCSU, and Inter-Faculty Organization entered into a settlement agreement on or about December 30, 1990, for purposes of resolving these complaints. (Id. ¶ 17.)

[2] Presumably Zmora and Tabakin would be the named plaintiffs for this subgroup.

[3] Presumably all four plaintiffs would be the named plaintiffs for this subgroup.

## C. The Defendants

SCSU is a publicly supported university organized and operated under the laws of the State of Minnesota. (Answer ¶ 9; Am. Compl. ¶ 10.) Plaintiffs allege that there are only twenty-five Jewish instructors at SCSU out of a total of 700 faculty members.[4] (Am. Compl. ¶ 26.) SCSU is a part of the Minnesota State Colleges and University System ("MnSCU"), a system of over thirty state-supported public colleges and universities situated throughout Minnesota. (Answer ¶ 9; Am. Compl. ¶¶ 8, 10.) MnSCU is governed by a Board of Trustees, which was established pursuant to Minnesota statute. (Answer ¶ 9; Am. Compl. ¶ 9.) James H. McCormick is Chancellor and chief executive officer of MnSCU. (Answer ¶ 9; Am. Compl. ¶ 11.)

Roy H. Saigo is the president of SCSU. (Answer ¶ 9; Am. Compl. ¶ 12.) The Plaintiffs have identified three individuals at SCSU below Saigo against whom they assert claims.[5] Richard D. Lewis is the Dean of the College of Social Sciences. (Answer ¶ 9; Am. Compl. ¶ 13.) Don L. Hofsommer was, until recently, the chair of the History

---

[4] For purposes of the Amended Complaint, Plaintiffs have defined "faculty" as including all members of the Inter-Faculty Organization ("IFO") bargaining unit and "all other professional staff at Saint Cloud State." (Am. Compl. ¶ 17.)

[5] Plaintiffs have named IFO in their Amended Complaint as a "Defendant-Indispensable Party." Plaintiffs allege that IFO is the exclusive bargaining agent for the SCSU faculty and is party to a collective bargaining agreement with the State of Minnesota, MnSCU and SCSU. Plaintiffs do not seek relief from IFO but, to the extent any remedial action ordered by the Court may impact the collective bargaining agreement, IFO has been named as a party. (Am. Compl. ¶ 16.)

Department at SCSU. (Answer ¶ 10; Am. Compl. ¶ 14.) Suzanne L. Williams was, at various times pertinent to the plaintiffs' lawsuit, the Vice President for Academic Affairs and Acting President at SCSU. (Answer ¶ 11; Am. Compl. ¶ 15.)

## II. Allegations of Anti-Semitic Discrimination at SCSU

### A. Allegations Specific to the Named Plaintiffs

Both Zmora, as a former faculty member at SCSU, and Tabakin, as a current faculty member at SCSU, allege that they have been subjected to a hostile, offensive, and intimidating work environment on account of being Jewish. (Am. Compl. ¶¶ 3, 4.) Zmora and Tabakin also allege that they have been discriminated against with respect to their compensation and the terms and conditions of their employment at SCSU. (Id.) Specifically, Zmora claims that, when he complained to Hofsommer that his salary was too low, Hofsommer misrepresented to him that salaries are the sole prerogative of the Dean.[6] (Am. Compl. ¶ 36b.)

In addition to discrimination in connection with compensation and terms and conditions of employment, Tabakin alleges that he was discriminated against with respect to promotions and transfers. (Am. Compl. ¶ 4.) No specifics, however, regarding the

---

[6] Defendants allege that Zmora's salary was initially established in 1998 and Tabakin's salary was initially established in 1989. (Answer ¶ 24.) Defendants further allege that the President of SCSU or a "designee" exercises discretion in establishing the initial salary for a faculty member; once set, that salary is thereafter paid according to objective schedules contained in the collective bargaining agreements between MnSCU and IFO. (Id.)

promotion(s) or transfer(s) in question are alleged.

Zmora complains that he was discriminated against in connection with his position teaching Early Modern European History. When that position changed from a fixed term position to a tenure-track position, it was awarded to a non-Jewish teacher. (Am. Compl. ¶ 3.) Zmora alleges that defendant Lewis told him that he (Lewis) had the decision-making power and "would see to it" that Zmora received the tenure-track position. According to Zmora, however, Lewis "manipulated the search process," "bypassed the normal chain of command," and "circumvented the defendants' rules and regulations" so that a non-Jewish candidate was hired instead of Zmora. (Id. ¶ 35.) Zmora further claims that the then-chair of the History Department, Hofsommer, appointed an individual who was hostile to Zmora to serve as the chair of the search committee, "manipulated the search process," "bypassed the normal chain of command," and "circumvented the defendants' rules and regulations" so that a non-Jewish candidate was hired.[7] (Id. ¶¶ 36f, 36g.) Zmora alleges that Lewis and Hofsommer passed him over for the tenure-track position in Early Modern European History because he had publicly discussed and lectured on the Holocaust and other matters of Jewish interest. (Am. Compl. ¶ 41a.)

Stryker alleges that she was retaliated against and denied equal protection of the laws because she opposed the Defendants' discriminatory practices, made charges and

---

[7] Zmora also complains generally about his treatment by Hofsommer. For example, Hofsommer allegedly "required" Zmora to read and comment on articles relating to the Holocaust and other Jewish-related subjects. (Id. ¶¶ 36d, 36e.)

participated in administrative proceedings under Title VII and the MHRA. (Id. ¶ 5.) Specifically, Stryker claims that the defendants (namely Lewis and Hofsommer) concocted false charges and attempted to terminate her after she publicly protested the Defendants' failure to appoint Zmora to the tenure-track faculty position. (Id. ¶¶ 29a, 41b.) Stryker complains that Williams aided and abetted this retaliation by (1) initiating proceedings against her based on the trumped-up charges, (2) appointing Lewis to investigate the charges, and (3) conditioning Stryker's retention on her being absolved from the charges. (Id. ¶ 42.) Stryker also claims that Lewis and Hofsommer refused to pay compensation and sick pay to her and would not furnish her an accounting of their failure to do so. (Id. ¶¶ 5, 41b.)

Hoy alleges that she also was retaliated against and denied equal protection of the laws because she opposed the defendants' discriminatory practices, made charges, and participated in administrative proceedings under Title VII and the MHRA. (Id. ¶ 6.) Hoy specifically claims that, after she organized a public protest in support of Professor Stryker, Lewis changed her grade in a class from an "A" to an "incomplete," told her that she would have to retake the course from him in order to obtain a grade, and told her that if she wanted a degree in her major, she would have to go elsewhere. (Id. ¶¶ 29b, 41c.)

**B. General Allegations**

Several paragraphs of the Amended Complaint describe ongoing patterns and practices of employment discrimination. (Id. ¶¶ 20, 25, 26.) Specifically, Plaintiffs

allege a pattern and practice of discrimination with respect to the hiring, promotion, scheduling, and retention of Jewish faculty. (Id. ¶ 20.) Plaintiffs allege that Jewish faculty members have routinely been denied promotions, or promotions have been delayed, because of assertions that the individual "does not fit in" or is "aggressive." (Id. ¶ 24.) Plaintiffs also claim that the Defendants have engaged in a pattern and practice of hiring Jewish faculty members at "below scale" wages and misleading them as to the appropriate wage that applies to their positions. (Id. ¶ 25.)

The Amended Complaint also alleges that the Defendants have condoned, tolerated, and promoted a hostile climate for Jewish faculty members. (Id. ¶ 22.) Several examples of this hostile environment involve alleged acts by department administrators and other faculty members. (Id.) The Amended Complaint further alleges that Jewish faculty have been "targeted" with unsubstantiated accusations of discriminatory conduct in an effort to undermine their qualifications and positions.[8] (Id. ¶ 23.) Plaintiffs also complain that Defendants have impeded the filing of charges and grievances alleging anti-Semitism, have not timely investigated such charges and grievances, and have investigated such charges in a discriminatory fashion. (Id. ¶¶ 27, 28.)

Finally, Plaintiffs contend that the Defendants have engaged in a general policy of retaliation against faculty and students, Jewish and non-Jewish, who have objected to the

---

[8] It is unclear from the Amended Complaint who has made the unsubstantiated charges of discriminatory conduct against Jewish faculty members – students or other faculty members.

alleged discrimination. (Id. ¶ 29.) Specifically, Plaintiffs claim that the Defendants have retaliated against faculty and students who have submitted affidavits to the EEOC and SCSU's Affirmative Action office in support of complaints of discrimination. (Id. ¶ 29c.)

## III. Allegations of Civil Rights Violations

With respect to the Plaintiffs' claims of civil rights violations, the only factual assertions identifying a named plaintiff involve Stryker, a non-Jewish history professor who objected to and publicly protested the university's failure to appoint Zmora to the tenure-track faculty position. Stryker alleges that she was deprived of due process under the Fourteenth Amendment when the Defendants refused to furnish her with information regarding charges brought against her – information that Stryker had duly demanded. (Am. Compl. ¶ 47.)

In all other respects, the allegations of civil rights violations are general, including the named plaintiffs and members of the putative class. It is alleged that the Defendants have deprived Plaintiffs and the class of First Amendment rights of free speech and petition for redress of grievance by retaliating against students and faculty for engaging in such activity. (Am. Compl. ¶ 45.) The Defendants also allegedly deprived Plaintiffs of equal protection of the laws by subjecting Jewish faculty at SCSU to a hostile work environment, discriminating against Jewish faculty and applicants regarding hiring and the terms and conditions of employment, refusing to take prompt and effective remedial action, and refusing to include a prohibition against anti-Semitism in the school's anti-

discrimination policies. (Id. ¶ 44.) Finally, the Defendants allegedly violated Plaintiffs' due process rights by failing to follow and deliberately circumventing MnSCU and SCSU rules, regulations, and procedures established to insure fair and impartial employment decisions. (Id. ¶ 46.)

**Analysis**

## I. Standard of Decision

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings may not be granted unless the moving party clearly establishes that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law. See National Car Rental Sys., Inc. v. Computer Assocs. Int'l. Inc., 991 F.2d 426, 428 (8th Cir.1993). In determining whether material issues of fact exist, the court must accept all facts pled by the non-moving party as true and draw all reasonable inferences in favor of the non-moving party. See Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir.1990).

The Plaintiffs object to the Court's consideration of the Defendants' motion, arguing that because this action has been filed as a class action alleging a pattern and practice of discriminatory behavior, the Court cannot evaluate the viability of the individual claims before class-wide issues have been decided. In support of this argument, the Plaintiffs rely heavily on the Eighth Circuit's opinion in Craik v. Minnesota

State University Board, 731 F.2d 465 (8th Cir. 1984). The procedural posture of Craik is markedly different, however, from the one before the Court here.

In Craik, the plaintiffs alleged gender discrimination with respect to promotions, compensation and other terms and conditions of employment, both individually and on behalf of all females who were or had been employed in a teaching capacity by SCSU. Craik, 731 F.2d at 468. Following *a thirty-two day bench trial*, the magistrate judge entered judgment in favor of the defendants, concluding that they had not discriminated against either the class or the named plaintiffs. Id. On appeal, the Eighth Circuit first described the different allocations of the burdens of production and persuasion for Title VII claims that apply depending on whether the plaintiff is asserting claims in a "non-class" setting versus on behalf of many employees. Id. at 469-70. Recognizing that its recent precedents had been inconsistent, the Craik court set about "distinguishing the analysis required for broad-based class actions from that required for individual, non-class actions" for employment discrimination. Id. at 471. The Eighth Circuit concluded that, *at trial*, the magistrate judge had not followed the order of proof specified for class action employment discrimination cases. Id. The Craik opinion does not, however, prohibit a district court from deciding, prior to class certification, whether a named plaintiff's individual claims must be dismissed on grounds such as lack of standing or statute of limitations. In fact, the Eighth Circuit has affirmed the dismissal of the individual claim of a named plaintiff prior to a decision on class certification. In re Milk

Prods. Antitrust Litig., 195 F.3d 430, 435-36 (8th Cir. 1999). The Court concludes that it can consider the Defendants' motion at this time.

## II. Dismissal of the Aiding and Abetting Claim Against Lewis and Hofsommer

The Defendants contend that the Plaintiffs have failed to state a legally tenable claim for aiding and abetting under the MHRA because the Plaintiffs have pled no underlying MHRA claim. The Defendants argue in a footnote that, if the Plaintiffs would have pleaded an MHRA claim against the State, MnSCU and SCSU, such a claim would be subject to dismissal under the Eleventh Amendment.[9] (Defs.' Mem. Supp. Mot. for Partial J. on the Pleadings at 4, n.2.) The Defendants assert that, because MnSCU and SCSU could not be held liable in this Court for a violation of the MHRA, Lewis and Hofsommer cannot be held liable in this Court for aiding and abetting such a violation.

Paragraph 34 of the Amended Complaint alleges that

> The discriminatory practices described in paragraphs 17 through 32 above are also unfair discriminatory practices prohibited by the Minnesota Human Rights Act, Minn. Stat. § 363.03, subd. 1(2). ***Defendants Lewis and***

---

[9] "The Eleventh Amendment bars federal court jurisdiction over state law claims against unconsenting states or state officials when the state is the real, substantial party in interest, regardless of the remedy sought." Cooper v. St. Cloud State Univ., 226 F.3d 964, 968 (8th Cir. 2000). A suit is deemed to be "against the state" if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984) (internal quotation marks omitted) The Court notes that the state entity Defendants (the State, MnSCU, and SCSU) did not move for dismissal of the MHRA claims against them as part of the Motion for Judgment on the Pleadings.

> ***Hofsommer intentionally aided and abetted defendants MnSCU and St. Cloud State in committing said unfair discriminatory practices***, in violation of Minn. Stat. § 363.03, subd. 6.

(Am. Compl. ¶ 34 (emphasis added).) Subdivision 6 of section 363.03 of the MHRA provides that "[i]t is an unfair discriminatory practice for any person . . . [i]ntentionally to aid, abet, incite, compel, or coerce a person to engage in any of the practices forbidden by this chapter . . . ." Minn. Stat. § 363.03, subd. 6(1).[10] Plaintiffs oppose the Defendants' motion to dismiss on the grounds that, even if MnSCU and SCSU cannot be subjected to liability in federal court for violating the MHRA, they can nevertheless be found, in federal court, to have engaged in a practice forbidden by the statute. Plaintiffs argue that a finding that another person has engaged in a prohibited practice is required to proceed with a claim of aiding and abetting under the MHRA.

The cases relied upon by the Defendants establish that, where a factfinder does not find an alleged violation of the MHRA (or where a court of appeals concludes that no reasonable factfinder could find such a violation), dismissal of a claim alleging that another aided or abetted that violation is appropriate.[11] None of these cases, however,

---

[10] Minn. Stat. § 363.03, subd. 6 also makes it unlawful for any person "[i]ntentionally to attempt to aid, abet, incite, compel, or coerce a person to engage in any of the practices forbidden by this chapter." Although Plaintiffs argue in their opposition memorandum that they state a claim for attempt, there is no allegation that Defendants Lewis and Hofsommer attempted to aid and abet an unlawful practice.

[11] Williams v. Metropolitan Waste Control Comm'n, 781 F. Supp. 1424, 1428-29 (D. Minn. 1992) (Rosenbaum, J.) (acting as the finder of fact on MHRA claims and concluding that, because plaintiff failed to establish existence of a racially hostile work

addresses whether a plaintiff may assert a claim under the MHRA against an individual defendant for aiding and abetting discrimination where a federal court lacks jurisdiction over the principal because of Eleventh Amendment immunity. Neither party has cited the Court to any federal case addressing the impact of a state employer's Eleventh Amendment immunity on a plaintiff's ability to claim that individuals aided and abetted the state employer in engaging in discriminatory conduct that violates a state statute.

The Court has, on its own, found one case discussing the interplay between Eleventh Amendment immunity and aider and abettor liability for discrimination in violation of a state statute. In Mukaida v. Hawaii, 159 F. Supp. 2d 1211 (D. Haw. 2001), the plaintiff brought suit against the State of Hawaii, the University of Hawaii, and a co-employee, Norman Okamura, alleging that Okamura sexually harassed her while both

---

environment or discrimination by employer in the terms and conditions of employment, it was unnecessary to address aiding and abetting claims against individuals); Langehaug v. Mary T., Inc., No. C1-97-9348, 1999 WL 31182 at * 2-3 (Minn. Ct. App. Jan. 26, 1999) (affirming summary judgment dismissing MHRA aiding and abetting claim where plaintiff failed to establish prima facie case of sexual harassment and disparate treatment discrimination); Olson v. City of Lakeville, No. CX-96-6170, 1997 WL 561254 at * 3-5 (Minn. Ct. App. Sept. 9, 1997) (same); Harper v. North Hennepin Community College, No. C0-97-427, 1997 WL 471198 at * 2 (Minn. Ct. App. Aug. 19, 1997) (affirming summary judgment dismissing MHRA aiding and abetting claim where plaintiff failed to establish a prima facie case of discrimination by an educational institution); TeBockhorst v. Bank United of Texas, No. C6-97-206, 1997 WL 471320 at * 5 (Minn. Ct. App. Aug. 19, 1997) (affirming summary judgment dismissing aiding and abetting claim where plaintiffs failed to establish quid pro quo or hostile environment sexual harassment or reprisal); Hengesteg v. Ecolab, Inc., No. C1-91-2156, 1992 WL 89647 at * 2 (Minn. Ct. App. May, 5. 1992) (affirming summary judgment dismissing MHRA aiding and abetting claim where district court correctly held plaintiff failed to meet her burden on summary judgment to establish a prima facie case of gender discrimination by her employer).

were employed at the university. Okamura, the university, and the state filed separate motions for summary judgment. The United States District Court for the District of Hawaii concluded that the University of Hawaii was entitled to Eleventh Amendment immunity. 159 F. Supp. 2d at 1220-22. It further determined that, to the extent Mukaida had sued Okamura in his official capacity, he shared in the Eleventh Amendment immunity of the state. Id. at 1227. The trial court then turned to Mukaida's claims that Okamura was liable for aiding and abetting discriminatory practices under a Hawaiian statute that parallels subdivision 6(1) of section 363.03 of the Minnesota Statutes.[12]

"Because Okamura in his official capacity [had] the same Eleventh Amendment immunity as the State," the district court dismissed the aiding and abetting count "to the extent it is alleged against Okamura in his official capacity." Id. at 1240. To the extent Mukaida had alleged the aiding and abetting claim against Okamura in his individual capacity, however, the court concluded that the count remained for adjudication. Id. It ultimately dismissed the count against Okamura in his individual capacity because Mukaida "had failed to identify any discriminatory practice by anyone other than Okamura, and . . . Okamura could hardly be liable for aiding and abetting himself." Id. (emphasis added).

---

[12] Section 378-2(3) of the Hawaii Revised Statutes makes it unlawful for "any person whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the discriminatory practices forbidden by this part, or to attempt to do so." See Mukaida, 159 F. Supp. 2d at 1240.

From the district court's reasoning in Mukaida, this Court infers that the plaintiff could have stated a viable claim against Okamura in his individual capacity had she identified a discriminatory practice engaged in by someone other than Okamura. This Court cannot conclude, from the record before it, that Plaintiffs here will be unable to identify a discriminatory practice, engaged in by someone other than Lewis or Hofsommer, that Lewis or Hofsommer could have aided or abetted. Based on the factual record and authorities before the Court in this case, the Court cannot conclude, as a matter of law, that the aiding and abetting claims against Lewis and Hofsommer must be dismissed. Accordingly, the Court will deny the Defendants' motion on that issue.

**III. Dismissal of Various Claims by Tabakin and Zmora as Time-Barred**

The Defendants argue that Tabakin's individual claims for harassment, discriminatory failure to promote, and discriminatory compensation and Zmora's claim of discriminatory compensation must be dismissed on the grounds that they are time-barred. To allege their statute of limitations defense, the Defendants made numerous factual allegations in their Answer, several of which are footnoted above. Plaintiffs argue that the Defendants' methodology is improper. Any facts alleged in the Answer must be treated as being denied because no responsive pleading to the Answer is required. Fed. R. Civ. P. 8(d). The existence of those additional facts alleged in the Answer cannot be deemed to have been established; in the language of Rule 12(c), those allegations present material issues of fact. See 5A Charles A. Wright and Arthur R. Miller, Federal Practice

and Procedure, § 1368.

Given the procedural posture of this matter and the record before the Court, the Court cannot consider the merits of the Defendants' statute of limitations arguments. The Plaintiffs are correct that new factual matter alleged in a pleading to which no responsive pleading is required is deemed to be denied, thus presenting issues of material fact. The Defendants did not file affidavits or exhibits to substantiate the new factual matter alleged in their Answer. Had they done so, the Court could have converted the motion to one for partial summary judgment under Rule 56 and reached the merits of the arguments. See Fed. R. Civ. P. 12(c). Accordingly, the Court will deny the Amended Motion for Judgment on the Pleadings to the extent it seeks the dismissal of claims as time-barred.

## IV. Dismissal With Prejudice of Hoy's Retaliation Claim

The Defendants seek to dismiss plaintiff Hoy's claim of retaliation under Title VII on the grounds that Hoy is a student at SCSU, not an employee. The Plaintiffs note in their responsive brief that they have advised the Defendants they do not intend to include Hoy as a named plaintiff in the Title VII claim and would be willing to stipulate that she is not a plaintiff for purposes of that claim. (Pls.' Mem. Opp'n Mot. for J. on the Pleadings at 1-2, n.1.)

The Plaintiffs' proposed stipulation does not address whether Hoy has a legally viable claim under Title VII for retaliation -- indeed, it suggests that she does not. The retaliation provision of Title VII, states that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3. There is no allegation in the Amended Complaint that, vis-a-vis any of the defendants, Hoy was (a) an employee or applicant for employment, (b) an individual interacting with an employment agency or joint labor-management committee, or (c) a member or applicant for membership in a labor organization. Accordingly, Hoy's individual retaliation claim under Title VII will be dismissed with prejudice.

## V. Tabakin's Claim Regarding the Denial of a Transfer

The Defendants seek dismissal of any individual claim by Professor Tabakin arising out of a denial of a transfer. The Defendants rely upon cases holding that a job transfer involving no change in the employee's terms or conditions of employment is not an adverse employment action.[13] Those determinations, however, rest upon factual findings made from a record developed before the district court. Thus, the procedural

---

[13] See LaPique v. Hove, 217 F.3d 1012, 1013-14 (8th Cir. 2000) (holding that a transfer or failure to transfer "is not an adverse employment action of sufficient consequence to justify an action under Title VII, assuming, ***as is the case here***, that the job to which the employee is being transferred is of equal pay and rank, and with no material change in working conditions." (emphasis added).)

posture of those cases differs from that presented here.

Conceivably, a transfer could result in terms and conditions that are more favorable to the employee; therefore, denial of such a transfer could be considered an adverse job action. The procedural posture of the present motion requires the Court to take as true the facts alleged in the Amended Complaint. The Plaintiffs' Amended Complaint, consistent with the requirements of notice pleading, contains no specific allegations regarding the transfer that was denied. On the record presently before it, the Court cannot conclude as a matter of law that the denial of Tabakin's requested transfer was not an adverse employment action.

## VI. Dismissal Without Prejudice of Claims Brought by Stryker

### 1. Dismissal of Stryker's Retaliation Claim Against Williams

Count IV of the Plaintiffs' Amended Complaint is entitled "Retaliation -- Minnesota Human Rights Act." The final paragraph under Count IV alleges that

> Defendant Williams, in the course and scope of her employment, aided and abetted defendants Lewis and Hofsommer in committing the above-described reprisals against plaintiff Stryker by initiating proceedings against plaintiff Stryker based upon the above described false and fraudulent charges, by appointing defendant Lewis to investigate the charges, and by conditioning defendant Stryker's retention on being absolved from the said charges.

(Am. Compl. ¶ 42.)[14] Defendants argue that the "reprisal" claim against Williams should

[14] The "above-described reprisals against plaintiff Stryker" referenced in paragraph 42 are set out in paragraph 41(b), which charges that

> Defendants Lewis and Hofsommer, in the course and scope of their

be dismissed without prejudice because the Plaintiffs have failed to allege that Williams participated in any discriminatory act as a perpetrator. Defendants base their argument on the text of subdivision 7 of section 363.03 of the MHRA, which reads:

> It is an unfair discriminatory practice for any individual who participated in the alleged discrimination as a perpetrator . . . to intentionally engage in any reprisal against any person because that person:
>
> (1) Opposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter; or
>
> (2) Associated with a person or group of persons who are disabled or who are of different race, color, creed, religion, sexual orientation, or national origin.
>
> A reprisal includes, but is not limited to, any form of intimidation, retaliation, or harassment. . . .

Minn. Stat. § 363.03, subd. 7. Plaintiffs respond that they have clearly claimed that Williams "aided and abetted" Lewis and Hofsommer in retaliating against Stryker, a cause of action that is authorized by the text of subdivision 6(1) of section 363.03.

Defendants reply that the "aiding and abetting" provision of subdivision 6(1) is general, whereas the reprisal provision of section 7 is particular in that it limits individual

---

> employment, retaliated against plaintiff Stryker after she publicly opposed the defendants' discrimination against plaintiff Zmora, by among other things, recommending her non-retention, stopping her compensation, and concocting false and fraudulent charges against her after she objected to and publicly opposed the defendants' discriminatory treatment of Zmora.

(Id. ¶ 41(b).)

liability to those individuals who participated in the alleged discrimination. Under Minnesota's statutes of statutory construction, Defendants contend, the particular must control the general. Therefore, unless Plaintiffs have pled that Williams participated in the discrimination against Zmora (which Stryker protested against and for said protest, she claims, was retaliated against) the "reprisal" claim against Williams cannot stand.

The Court rejects the Defendants' "particular versus general" argument. The Minnesota Legislature specifically imposed liability on any person individual who intentionally aids or abets any other person in "engag[ing] in any of the practices forbidden by [the MHRA.]" By the Defendants' reading of the statute, the phrase "any of the practices forbidden by this chapter" would not include reprisals under subdivision 7. The Court finds no logical basis for excluding reprisals from the phrase "any of the practices forbidden by this chapter"; indeed, such a construction would seem to frustrate the intent of the Minnesota Legislature to enact broad remedial legislation for unfair discriminatory practices. The Court will deny the Defendants' motion with respect to the allegations against Williams in Count IV of the Amended Complaint.

**2. Dismissal of Stryker's § 1983 Claim**

Defendants complain that the paragraph in Plaintiffs' § 1983 claim alleging that Plaintiff Stryker was denied due process is deficient because it fails to plead any "facts" in support of the due process claim. The paragraph at issue states:

Defendants Board of Trustees, McCormick, and Saigo, in their representative

> capacities, acting under color of state law, further deprived plaintiff Stryker of due process of law by failing to furnish her with information required to be disclosed under the due process clause of the 14th Amendment, despite due demand having been made for disclosure of the same, in violation of 42 U.S.C. § 1983.

(Am. Compl. ¶ 47.) Plaintiffs respond that the failure to provide information that was demanded and that was required to be disclosed is a "factual" allegation as opposed to a legal assertion. Plaintiffs further note that, had the allegation been so vague Defendants could not respond, Defendants should have moved under Rule 12(e) for a more definite statement. Instead, they answered paragraph 47 with a denial, suggesting that they were capable of understanding and responding.

The Court finds no merit in Defendants' complaint regarding the insufficiency of the alleged § 1983 violation against Stryker. The Defendants were indeed capable of answering paragraph 47. Furthermore, Count V begins by incorporating the preceding paragraphs of the pleading, and Stryker earlier alleged that Lewis and Hofsommer refused to pay compensation and sick pay to her and would not furnish her an accounting of their failure to do so. (Id. ¶¶ 5, 41b.) Defendants have failed to establish why this alleged demand for an accounting by Stryker is not the demand for information referenced in paragraph 47. The Court will deny the Defendants' motion with respect to Count V.

**Conclusion**

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that the Defendants' Motion for Partial Judgment on the Pleadings (Doc. No.

6), as amended (Doc. No. 18), is **GRANTED IN PART** as follows:

1. Plaintiff Robbi Hoy's individual claim for retaliation under Title VII, as alleged in Count III of the Amended Complaint is **DISMISSED WITH PREJUDICE**.

2. In all other respects, the Defendants' Motion is **DENIED**.

Dated: April 10, 2002

RICHARD H. KYLE
United States District Judge